| | |
|---|---|
| DAVID A. CAINE, SBN 218074<br>david.caine@arnoldporter.com<br>THOMAS T. CARMACK, SBN 229324<br>tom.carmack@arnoldporter.com<br>ARNOLD & PORTERKAYE SCHOLER LLP<br>3000 El Camino Real<br>Five Palo Alto Square, Suite 500<br>Palo Alto, CA 94306<br>Telephone: (650) 319-4500<br>Facsimile: (650) 319-4700<br><br>Attorneys for Plaintiff TRINA HILL | **LEWIS BRISBOIS BISGAARD & SMITH LLP**<br>JOSEPH R. LORDAN, SB# 265610<br>Email: Joseph.Lordan@lewisbrisbois.com<br>ALLISON L. SHRALLOW, SB# 272924<br>Email: Allison.Shrallow@lewisbrisbois.com<br>333 Bush Street, Suite 1100<br>San Francisco, California 94104-2872<br>Telephone: 415.362.2580<br>Facsimile: 415.434.0882<br><br>Attorneys for Defendant GOODFELLOW TOP GRADE CONSTRUCTION LLC |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| TRINA HILL,<br><br>                Plaintiff,<br><br>vs.<br><br>GOODFELLOW TOP GRADE CONSTRUCTION LLC,<br><br>                Defendant. | CASE NO.: 4:18-cv-01474-HSG<br><br>**JOINT DISCOVERY LETTER RE PLAINTIFF TRINA HILL'S MOTION TO COMPEL PRODUCTION AND RESPONSES** |

**MEET AND CONFER ATTESTATION**

Plaintiff Trina Hill ("Ms. Hill") and Defendant Goodfellow Top Grade Construction, LLC ("Goodfellow") hereby attest that on February 25, 2018 they met and conferred telephonically prior to filing this letter, and have complied with Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery prior to filing the joint letter.

DATED: March 4, 2019                ARNOLD & PORTER KAYE SCHOLER LLP

                                      By:  */s/ Thomas T. Carmack*
                                              David A. Caine
                                             Thomas Carmack
                                             Attorneys for Plaintiff TRINA HILL

| | | |
|---|---|---|
| DATED: March 4, 2019 | | LEWIS BRISBOIS BISGAARD & SMITH LLP |
| | By: | */s/ Allison L. Shrallow* |
| | | Joseph R. Lordan |
| | | Allison L. Shrallow |
| | | Attorneys for Defendant GOODFELLOW TOP GRADE CONSTRUCTION, LLC |

March 4, 2019

**VIA ECF FILING**

Judge Westmore
CAND, Oakland Courthouse
1301 Clay Street, Oakland, CA 94612

    Re:    *Trina Hill v. Goodfellow Top Grade Construction, LLC*,
           Case No. 18-cv-01471-HSG (KAW)

Dear Judge Westmore:

## I.    JOINT STATEMENT REGARDING DISPUTE

Ms. Hill seeks an order requiring Goodfellow to produce information or documents sufficient to show the number of African Americans Goodfellow employed and terminated each month from October 2017 to present. Goodfellow has produced the requested information for May through September 2017 and objects to any further production based on the reasons stated below.

## II.    FACTUAL BACKGROUND

Ms. Hill started employment with Goodfellow on May 19, 2017. The last day Ms. Hill worked for Goodfellow was September 18, 2017. On March 6, 2018, she filed a complaint alleging three causes of action against Goodfellow pursuant to Title VII: (1) race discrimination and race harassment (2) sex discrimination and sex harassment, and (3) retaliation. Dkt. 1. On November 30, 2018, Ms. Hill served interrogatories and requests for production seeking information regarding the number of African Americans Goodfellow employed and terminated from May 2017 to present.

RFP No. 85 seeks: "Documents sufficient to show the number of African American employees or contractors YOU had on a monthly basis from May 2017 through the present." Ex. A. Goodfellow responded to RFP No. 85 on January 7, 2019, with a number of objections (overbroad, unduly burdensome, proportionality, relevance, attorney-client privileged/work-product, and third-party privacy rights) and did not agree to produce responsive documents. *Id.*

Interrogatory No. 1 reads: "State, on a month-by-month basis, how many African Americans YOU employed from May 2017 to the present." Ex. B. Goodfellow responded to Interrogatory No. 1 with a number of objections (overbroad, unduly burdensome, and proportionality) and provided the following information for May 2017 through September 2017: "At the Chase Center job site, Defendant employed 13 African American employees in May 2017, 14 African American employees in June 2017, 25 African American employees in July 2017, 17 African American employees in August 2017, and 21 African American employees in September 2017." *Id.*

**Arnold & Porter Kaye Scholer LLP**
3000 El Camino Real Five Palo Alto Square, Suite 500 | Palo Alto, CA 94306-3807 | **www.arnoldporter.com**

USArchive 200058147v6

On January 14, 2019, by agreement, Ms. Hill served written deposition questions in lieu of pursuing a live deposition with respect to topic No. 32 of her 30(b)(6) deposition notice, which sought: "On a monthly basis, the number of African Americans employed by YOU and the number of African American's terminated by YOU From May 2017 to present at the Chase Center job site." Ex. C. On January 22, 2019 Goodfellow objected to this topic (vague and ambiguous, as a whole and as to the undefined term "terminated," overbroad, unduly burdensome, proportionality, and relevance), and objected to this question on the grounds that the racial identity of its employees was made on information and belief and through self-reported questionnaires and provided the following information from May 2017 through September 2017: "Between May 2017 and September 2017, Goodfellow employed the following number of African American employees each month at the Chase Center job site: May 2017: 13; June 2017:14; July 2017: 25; August 2017: 17; September 2017: 21. Further, between May 2017 and September 2017, Goodfellow terminated the following number of African American employees each month who worked at the Chase Center job site: May 2017: 0; June 2017: 0; July 2017: 2; August 2017: 5; September 2017: 3." *Id*.

### III. PLAINTIFF'S POSITION

As her final compromise position, Ms. Hill seeks the number of African American employees and contractors Goodfellow hired and terminated each month from October 2017 to present. Ms. Hill does not request any particular form of production, which could be made as a written response to Interrogatory No. 1 or 30(b)(6) deposition topic No. 32, or the production of documents sufficient to show the information.

Goodfellow presents two grounds for withholding this information: (1) that it is irrelevant; and (2) that production would be unduly burdensome. Neither is persuasive.

First, Ms. Hill seeks this information to support her Title VII claims based on racial discrimination. "The Supreme Court has stated that general statistical data is helpful in individual employment discrimination cases." *Lynn v. Regents of Univ. of California*, 656 F.2d 1337, 1342 (9th Cir. 1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805 (1973)). Proof of a "general pattern" of discrimination based on a particular criterion, such as race, is "evidence which tends to establish that it is more likely than not" that the adverse employment decision was based on that criterion. *Id.* at 1343. Here, such evidence would support Ms. Hill's claim that Goodfellow discriminated against her based on race in conjunction with her constructive termination. Ms. Hill has reason to believe that Goodfellow had a pattern and practice of replacing African American workers and that it has cherrypicked termination data to produce in this case that would cast its hiring and firing practices in the best light. Goodfellow should not be allowed to use its objections as both a sword and a shield.

Goodfellow does not appear to genuinely contest that the requested information is relevant because it produced it for the months of May through September 2017. However, because the requested information goes to pattern and practice, there is no basis in relevance to limit production to the time of Ms. Hill's employment. Goodfellow's hiring and firing of African Americans after Ms. Hill's employment is as relevant to its practice with respect to that protected class as the information Goodfellow has already produced. *See Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 561 (10th Cir.1996) ("[E]vidence concerning the make-up of the

employment force and events which *occurred after plaintiff's termination were entirely relevant* to the question of whether or not age was one of the determinative reasons for plaintiff's termination.") (emphasis added). Furthermore, the post-termination data is uniquely relevant to showing that Goodfellow's discrimination was longstanding. Thus, the information Ms. Hill seeks from October 2017 to present is relevant to her claims and is reasonably tailored to the needs of the case; she has no other way to obtain it.

Goodfellow's argument below that only its treatment of employees who worked with Ms. Hill in the same shifts, under the same managers, is relevant misses the reason demographic data is probative. In *Lynn*, the plaintiff professor presented statistics showing "[p]roof of a ***general pattern*** of sex discrimination" by U.C. Irvine as whole. *Lynn*, 656 F.3d at 1343. These statistics were not limited, for example, to the plaintiff's department. *Id*. The Court specifically found this evidence sufficient to establish a prima facie case of disparate treatment because it "tend[ed] to establish that it is 'more likely than not' that a University's decision to deny tenure was based on sex." *Id*. In other words, it was precisely the organization-wide pattern of discrimination that suggested the plaintiff in particular was terminated for a discriminatory reason. And, while it is true, that this type of general statistical data is "particularly helpful in the academic context, where the tenure decision is highly subjective," as Goodfellow points out, this does not diminish the fact that "[t]he Supreme Court has stated that general statistical data is helpful in individual employment discrimination cases." *Id*. (citations omitted).

Furthermore, Goodfellow does not contest that data postdating the plaintiff's employment is relevant--only that there should be some undefined time limit. However, the plaintiff's choice in *Greene* to present only three months of data following his termination in no way suggests that additional data would be irrelevant here. As Goodfellow concedes, the plaintiff in *Greene* focused on statistical data for *12 months* following the appointment a new president of the company. *Greene*, 98 F.3d at 560. It is axiomatic that such data would be relevant to show a top-down company policy of discrimination--precisely what Ms. Hill seeks to discover here.

Second, Goodfellow's recitation of the burden required to produce the requested information is demonstrably incorrect. Rather than review each personnel file, Goodfellow may simply produce the files themselves, as well as any other data necessary for Ms. Hill's counsel to identify the correct files, including daily dispatch reports. To the extent any of the files contains protected privacy information, Goodfellow may redact it. Litigants regularly avoid federal and state privacy concerns by redacting identifying information from such files. *See, e.g., Reynolds v. Gerstel*, No. 1:09-CV-00680-AWI, 2011 WL 2635969, at *3 (E.D. Cal. July 5, 2011). Goodfellow's suggestion that redacting the files would be as burdensome as compiling the data itself strains credulity. Presumably, Goodfellow uses forms that place personally-identifying information in the same places in each file to allow for automated or semi-automated redaction. Moreover, the argument that information regarding termination is protected is nonsensical because Goodfellow has already produced exactly this data for May through September 2017. Moreover, neither of its cited cases stands for this proposition and both have been disapproved by the California Supreme Court.

Goodfellow's estimate of how long it would take to review the personnel files to produce the requested information as a compilation is also overblown. Goodfellow has already reviewed all the personnel files necessary to provide the requested information for May through September

2017. And, counsel for Goodfellow confirmed during the meet and confer process that they have already created a spreadsheet with this data. Thus, despite Goodfellow's protestations below, it may rely on the spreadsheet--rather than review all the files again--for any employee still working after September 2017. The only remaining files to be reviewed are those relating to employee turnover after September 2017, which Goodfellow studiously avoids quantifying. As Ms. Hill has no source other than Goodfellow for obtaining the information, the value of the information outweighs the burden of conducting an incremental review--a burden Ms. Hill has offered to assume.

IV.     DEFENDANT'S POSITION

Mr. Hill worked for Goodfellow for only five (5) short months (May 2017 to September 2017). Ms. Hill's last day of work was September 18, 2017.

First, demographic information regarding the number of African American employees Goodfellow terminated is not relevant to Ms. Hill's claims because Goodfellow did not terminate Ms. Hill. Rather, Ms. Hill left the job site on September 18, 2017, submitted a doctor's note on September 19, 2017 putting her off work until December 20, 2017, and never contacted Goodfellow about returning to work. Thus, Goodfellow administratively ended Ms. Hill's employment on March 20, 2018. Further, this data is not relevant to Ms. Hill's disparate treatment claim that her managers treated her differently because of her race. This is not a class action. In 2017, Goodfellow employed 143 employees at the Chase Center and the majority of these employees worked different shifts and reported to different managers than Ms. Hill. Accordingly, Goodfellow properly asserted its objections to these overbroad and unduly burdensome discovery requests, and in an effort to reach a good faith and reasonable compromise and without conceding as to its relevance, provided Ms. Hill with the demographic information during the relevant time period of May 2017 to September 2017 – *i.e.,* Plaintiff's employment. This data reflects no "pattern and practice" of race discrimination existed. Between May 2017 and September 2017, the number of African American employees working at Chase Center increased from month to month (with the exception of August): May 2017 (13), June 2017 (14), July 2017 (25), August 2017 (17) and September 2017 (21). Further, the data reflects that despite Goodfellow terminating five African American employees in August 2017, Goodfellow hired four additional African American employees in September 2017 (August 2017: Goodfellow employed 17 African American employees; September 2017: Goodfellow employed 21 African American employees).

Second, the discovery request is overbroad and unduly burdensome. Despite the data showing that no general pattern of race discrimination exists, Ms. Hill contends that she has "reason to believe" that Goodfellow replaced African American workers with non-African American workers (despite the data contradicting her contention) and seeks 22 months of demographic data. Ms. Hill only worked for Goodfellow for five (5) months and Goodfellow's flagging operations (which Ms. Hill contends was the only job she could perform) at the Chase Center ceased in December 2017 or three (3) months after Plaintiff's employment ended. While the *Lynn* case, which involved the highly subjective tenure decision unique to academic institutions, states that statistical data can be probative in establishing a pattern of discrimination, it does not stand for the proposition that plaintiffs are entitled to statistical data for the period of time after a plaintiff's employment has ended.

As Goodfellow has previously explained to Ms. Hill's counsel, Goodfellow had to conduct a time-consuming search for this information. First, Goodfellow had to review its <u>daily</u> dispatch reports to determine which employees worked each day and compile a list of employees who worked during a particular month. Second, Goodfellow had to conduct a thorough search of more than a hundred personnel files (which consisted on average of between 30 to 70 pages) to determine whether these employees chose to voluntarily self-identify their race. This search took approximately 16 hours to complete. Then Goodfellow had to conduct a diligent search and inquiry to determine whether any of its African American employees were terminated, and if so, when, for the period of time between May 2017 and September 2017. This took approximately 4 hours. Goodfellow provided Ms. Hill with this information. For Goodfellow to conduct the same search and inquiry for a time period of 17 additional months (October 2017 to present) or 3.4 times the scope of its original search and inquiry, Goodfellow estimates that it will take an additional 68 hours (20 hours x 3.4). As the data reflects, there was a lot of turnover at the job site so Goodfellow will have to determine whether any of its post-September 2017 employees voluntarily self-identified their race and determine if and when any of its African American employees were terminated between October 2017 and present. Goodfellow cannot rely on its spreadsheet which contains data pertaining only to the time period of May to September 2017 to obtain this information. Ms. Hill's proffered solution of producing redacted personnel files is no less burdensome. Goodfellow would still have to conduct the same inquiry as above (*i.e.*, determine who worked each month between October 2017 and present and then search all of the new employee's personnel files to determine if they self-identified as African American) and then painstakingly redact privacy-protected information from each African American employee's 30 to 70 page personnel files. Further, information about whether these employees were terminated is protected from disclosure from third-party privacy rights. *See Board of Trustees of Leland Stanford Jr. Univ. v. Sup.Ct.* (Dong) (1981) 119 Cal. App. 3d 516, 528-530 and *Harding Lawson Assoc. v. Sup. Ct.* (1992) 10 Cal. App. 4th 7. Contrary to Plaintiff's claim, *Williams v. Superior Court* (2017) 3 Cal. 5th 531, 556-557, solely disapproved of various cases to the extent those cases stated that a party seeking discovery of private and confidential information always is required to establish a compelling interest, <u>it did not disapprove of the specific findings in these cases that employees had privacy interests in their confidential, personnel information.</u>

Finally, Ms. Hill's reliance on *Greene,* a 10th Circuit case, is misplaced. *Greene* does not state that Ms. Hill is entitled to demographic data for multiple months following the end of a plaintiff's employment. Rather, in *Greene*, the plaintiff presented demographic data from during his employment and three months after his employment terminated. Further the data related to eight top level executives over the age of 50 who reported to Defendant's newly hired president who were replaced by younger person, not the entire workforce. Here, Ms. Hill seeks demographic data for 17 months following the end of her employment regarding the entire African American workforce at the Chase Center job site – not just the employees who reported directly to her supervisor, Leonard Garcia. As a compromise, Defendant will agree to produce demographic data reflecting the number of African American employees terminated by Ms. Hill's direct supervisor, Mr. Garcia, for the time period of 3 months following Ms. Hill's employment (October 2017 to December 2017).

Respectfully submitted,

DATED: March 4, 2019            ARNOLD & PORTER KAYE SCHOLLER LLP

By:    */s/ Thomas T. Carmack*
       David A. Caine
       Thomas Carmack
       Attorneys for Plaintiff TRINA HILL

DATED: March 4, 2019            LEWIS BRISBOIS BISGAARD & SMITH LLP

By:    */s/ Allison L. Shrallow*
       Joseph R. Lordan
       Allison L. Shrallow
       Attorneys for Defendant GOODFELLOW TOP GRADE CONSTRUCTION, LLC

## ECF ATTESTATION

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the other signatory.

DATED: March 4, 2019            */s/ Thomas T. Carmack*
                                              Thomas T. Carmack