# EXHIBIT A
# RELEVANT PORTIONS OF PLAINTIFF'S 12/20/2018 DEPOSITION TRANSCRIPT

```
                    UNITED STATES DISTRICT COURT

                   NORTHERN DISTRICT OF CALIFORNIA

                          OAKLAND DIVISION



    TRINA HILL,              )
                             )
            Plaintiff,       )
    vs.                      )   Case No.: 4:18-cv-01474-HSG
                             )
    GOODFELLOW TOP GRADE      )
    CONSTRUCTION LLC,        )
                             )
            Defendant.       )
    _____)




                       VIDEOTAPED DEPOSITION OF

                             TRINA HILL

                       _____

                         December 20, 2018



    REPORTED BY:  JANINE P. GAMBLE, RPR, CSR NO. 10372
```

Trina Hill - 12/20/2018

| | |
|---|---|
| 1    Pursuant to Notice of Deposition and on | |
| 2  Thursday, December 20, 2018, commencing at 10:20 a.m., | |
| 3  thereof, at Lewis, Brisbois, Bisgaard & Smith, 333 Bush | |
| 4  Street, Suite 1100, San Francisco, California, before | |
| 5  me, JANINE P. GAMBLE, a duly licensed Certified | |
| 6  Shorthand Reporter, there personally appeared | |
| 7                        TRINA HILL | |
| 8  called as a witness by the Defendant, Goodfellow Top | |
| 9  Grade Construction LLP, who, having been first duly | |
| 10 sworn, was examined and testified as follows: | |
| 11                         -oOo- | |
| 12              P-R-O-C-E-E-D-I-N-G-S | |
| 13      THE VIDEOGRAPHER:  Good morning.  We are on | |
| 14 the video record at 10:20 a.m. on December 20th, 2018, | 10:20:19 |
| 15 for the Videotaped Deposition of Trina Hill. | 10:20:24 |
| 16      We are taping this deposition at 333 Bush | 10:20:28 |
| 17 Street in San Francisco, California, in the action | 10:20:32 |
| 18 entitled Trina Hill versus Goodfellow Top Grade, | 10:20:36 |
| 19 Case No. 4:18-cv-01474-HSG. | 10:20:39 |
| 20      My name is Anthony Hensley, and I am the video | 10:20:41 |
| 21 production specialist from Ben Hyatt Certified | 10:20:54 |
| 22 Deposition Reporters located in Encino, California. | 10:20:57 |
| 23 This is Tape No. 1 of Volume I. | 10:21:00 |
| 24      Would counsel and all present please identify | 10:21:02 |
| 25 yourselves for the record? | 10:21:07 |

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

| | | |
|---|---|---|
| 1 | you say to Sean that you believe didn't turn out well? | 16:54:45 |
| 2 | A. Let me say this. The complaints I had -- I | 16:54:52 |
| 3 | just didn't have good vibes from people and staff, at | 16:55:22 |
| 4 | least staff from Top Grade. It was from the day the | 16:55:26 |
| 5 | incident with Sal. Like I said, everything after that | 16:55:31 |
| 6 | was downhill, as far as I'm concerned, with Top Grade. | 16:55:34 |
| 7 | Q. What was the date of the incident with Sal? | 16:55:37 |
| 8 | A. I believe it was May 28th or May 27th. I'm | 16:55:45 |
| 9 | not sure of the exact date, but I know it was maybe nine | 16:55:54 |
| 10 | days after I was employed with them. | 16:56:00 |
| 11 | Q. Your testimony is that you complained to Sean, | 16:56:04 |
| 12 | and that didn't work out well. Do you have any examples | 16:56:06 |
| 13 | of this? | 16:56:09 |
| 14 | A. No. | 16:56:10 |
| 15 | Q. Did you complain to anyone else at Top | 16:56:13 |
| 16 | Grade -- at Goodfellow that didn't turn out well? | 16:56:15 |
| 17 | A. Like I said earlier, I tried to have as much | 16:56:35 |
| 18 | communication with Top Grade staff as possible (as | 16:56:40 |
| 19 | spoken). | 16:56:44 |
| 20 | Q. To answer my question, though, you can't think | 16:56:53 |
| 21 | of anything specific? | 16:56:55 |
| 22 | A. It was over a year ago; no, I can't. | 16:56:57 |
| 23 | (Defendant's Exhibit Number 13 marked for | 16:56:59 |
| 24 | identification.) | 16:56:59 |
| 25 | MR. LORDAN: What I've marked as Exhibit 13 is | 16:57:17 |

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

| | | |
|---|---|---|
| 1 | Goodfellow Bros. Top Grade Construction Substance Abuse | 16:57:19 |
| 2 | Policy, Bates stamped HILL 248 through 252. | 16:57:24 |
| 3 | Q.   Ms. Hill, you're familiar with this document? | 16:57:30 |
| 4 | A.   No. | 16:57:35 |
| 5 | Q.   You were provided a copy when you began at | 16:57:36 |
| 6 | Goodfellow; correct? | 16:57:38 |
| 7 | A.   I'm sure, if it was in the Handbook. | 16:57:41 |
| 8 | Q.   And you, in fact, produced this in discovery; | 16:57:44 |
| 9 | so you have a copy of it is what I'm trying to get at. | 16:57:46 |
| 10 | Correct? | 16:57:49 |
| 11 | A.   I believe -- if my lawyers produced it; I | 16:57:56 |
| 12 | don't believe I produced it. | 16:57:58 |
| 13 | Q.   It came from your camp, Ms. Hill. | 16:58:01 |
| 14 | A.   From my camp? | 16:58:04 |
| 15 | Q.   Your side, you and your lawyers. | 16:58:05 |
| 16 | A.   Okay.  Well, yes. | 16:58:08 |
| 17 | Q.   Are you familiar at all with this document? | 16:58:09 |
| 18 | A.   No. | 16:58:11 |
| 19 | Q.   Have you ever read it? | 16:58:12 |
| 20 | A.   No. | 16:58:13 |
| 21 | Q.   Do you understand generally that employees | 16:58:16 |
| 22 | involved with drugs and alcohol could be disruptive and | 16:58:18 |
| 23 | harm work performance and also present safety risks? | 16:58:22 |
| 24 | A.   Repeat the question. | 16:58:29 |
| 25 | Q.   Sure.  If you look -- actually, just turn to | 16:58:30 |

Ben Hyatt Certified Deposition Reporters
888.272.0022    818.343.7040    Fax 818.343.7119    www.benhyatt.com

| | | |
|---|---|---|
| 1 | page 2, and I'll just read it.  It's Roman numeral IV, | 16:58:34 |
| 2 | Overview.  Employees' involvement with drugs and alcohol | 16:58:38 |
| 3 | can be extremely disruptive and harmful to their work | 16:58:43 |
| 4 | performance, and pose serious safety and health risks to | 16:58:46 |
| 5 | the user and others.  Do you see that? | 16:58:48 |
| 6 |     A.   Where are you reading from? | 16:58:52 |
| 7 |     Q.   It's section IV.  You were looking at it right | 16:58:54 |
| 8 | there. | 16:58:55 |
| 9 |     A.   This one (indicating)? | 16:58:56 |
| 10 |     Q.   IV. | 16:58:57 |
| 11 |     A.   Okay. | 16:58:59 |
| 12 |     Q.   That's it.  That's what the first sentence | 16:59:03 |
| 13 | says.  Do you agree with that sentence? | 16:59:05 |
| 14 |     A.   No. | 16:59:08 |
| 15 |     Q.   You don't agree with it? | 16:59:09 |
| 16 |     A.   No.  No.  I was complimented on my work | 16:59:11 |
| 17 | performance daily. | 16:59:15 |
| 18 |     Q.   I'm -- I'm not asking about your performance, | 16:59:16 |
| 19 | Ms. Hill.  I'm asking do you agree with this sentence | 16:59:18 |
| 20 | generally? | 16:59:23 |
| 21 |     A.   It depends on the individual. | 16:59:27 |
| 22 |     Q.   You believe some individuals can use drugs and | 16:59:29 |
| 23 | alcohol and it won't affect their work performance or | 16:59:32 |
| 24 | pose serious safety risks? | 16:59:36 |
| 25 |     A.   Yes. | 16:59:40 |

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

| | | |
|---|---|---|
| 1 | Q.   At the last sentence of Section A, Prohibited | 16:59:45 |
| 2 | Behavior, it says, Employees must advise their | 16:59:49 |
| 3 | supervisors of any prescription drug that may, in any | 16:59:53 |
| 4 | way, affect their ability to safely perform their | 16:59:56 |
| 5 | duties. | 16:59:59 |
| 6 |      Do you see that? | 16:59:59 |
| 7 | A.   Yes. | 17:00:00 |
| 8 | Q.   Did you ever notify your supervisor of any | 17:00:00 |
| 9 | prescription drugs that you may have that would affect | 17:00:03 |
| 10 | your ability to -- | 17:00:07 |
| 11 | A.   No. | 17:00:08 |
| 12 | Q.   -- safely perform your duties? | 17:00:08 |
| 13 | A.   No. | 17:00:10 |
| 14 | Q.   The next sentence begins, Notwithstanding the | 17:00:13 |
| 15 | foregoing, the use of marijuana or cannabinoids is a | 17:00:15 |
| 16 | violation of this Policy, even if said use is prescribed | 17:00:17 |
| 17 | by a licensed physician.  Given that, small i, the | 17:00:22 |
| 18 | company must comply with both federal and state law, and | 17:00:27 |
| 19 | federal law prohibits the use of marijuana and, ii, the | 17:00:31 |
| 20 | use of marijuana could affect the safety of the | 17:00:35 |
| 21 | Company's employees, clients, and third parties. | 17:00:38 |
| 22 |      Do you see that? | 17:00:40 |
| 23 | A.   Yes. | 17:00:42 |
| 24 | Q.   You understand that governed your employment? | 17:00:42 |
| 25 | A.   Yes. | 17:00:46 |

| | | |
|---|---|---|
| 1 | Q.   Do you understand that you could be terminated | 17:00:46 |
| 2 | for using marijuana during your employment? | 17:00:48 |
| 3 | A.   I understand if I used marijuana on the job | 17:00:53 |
| 4 | site that I could be terminated. | 17:00:56 |
| 5 | Q.   You did not understand that using marijuana at | 17:01:00 |
| 6 | home or outside of work could result in your termination | 17:01:03 |
| 7 | of employment? | 17:01:07 |
| 8 | A.   I understand that I was not to use marijuana | 17:01:09 |
| 9 | at the job site. | 17:01:13 |
| 10 | Q.   But to answer my question, what was your | 17:01:20 |
| 11 | understanding regarding the use of marijuana at home? | 17:01:22 |
| 12 | A.   It's my personal business. | 17:01:25 |
| 13 | Q.   And, therefore, you could do it? | 17:01:29 |
| 14 | A.   It's personal at home.  What I do at home is | 17:01:32 |
| 15 | my personal business. | 17:01:35 |
| 16 | Q.   And, therefore, using marijuana at home is not | 17:01:36 |
| 17 | a violation of the company policy -- correct? -- in your | 17:01:39 |
| 18 | mind? | 17:01:42 |
| 19 | A.   As long as I didn't use marijuana while | 17:02:01 |
| 20 | working, during work hours on the job site, I felt as | 17:02:03 |
| 21 | though that's my personal business, what I do once I | 17:02:08 |
| 22 | left the job site. | 17:02:12 |
| 23 | Q.   Did you take prescription drugs during your | 17:02:16 |
| 24 | employment with Goodfellow? | 17:02:20 |
| 25 | A.   No. | 17:02:21 |

Ben Hyatt Certified Deposition Reporters
888.272.0022    818.343.7040    Fax 818.343.7119    www.benhyatt.com

| | | | |
|---|---|---|---|
| 1 | Q. | None? | 17:02:22 |
| 2 | A. | No. | 17:02:23 |
| 3 | Q. | Was that -- | 17:02:25 |
| 4 | A. | Besides my inhalers. | 17:02:26 |
| 5 | Q. | Aside -- | 17:02:28 |
| 6 | A. | My blood pressure pills. | 17:02:31 |
| 7 | Q. | So besides your blood pressure pills and your inhaler, did you take any other prescription drugs during your employment with Goodfellow? | 17:02:33 |
| 10 | A. | No. I am -- I get prescription drugs every month for my back, for my pinched nerve and sciatic. Have been since 1990 when I was diagnosed. I do not take them. | 17:02:42 |
| 14 | Q. | What drugs do you receive for your pinched nerve? | 17:02:55 |
| 16 | A. | Norco, Valium. | 17:03:00 |
| 17 | Q. | When was the last time you took Norco or Valium? | 17:03:09 |
| 19 | A. | I'm not sure. I don't take them. If I do take one, I would have to be in extreme pain. And I don't remember the last time I was in extreme pain. | 17:03:13 |
| 22 | Q. | Before your work at Goodfellow? | 17:03:25 |
| 23 | A. | Before? | 17:03:27 |
| 24 | Q. | Was the last time you took Norco or Valium before you began your employment with Goodfellow? | 17:03:28 |

| | | | |
|---|---|---|---|
| 1 | A. | No. | 17:03:33 |
| 2 | Q. | Did you ever take Norco or Valium during your | 17:03:36 |
| 3 | | employment with Goodfellow? | 17:03:39 |
| 4 | A. | No. | 17:03:40 |
| 5 | Q. | Have you taken it since your employment with | 17:03:40 |
| 6 | | Goodfellow? | 17:03:41 |
| 7 | A. | Once or twice. | 17:03:44 |
| 8 | Q. | When was the last time you took Norco or | 17:03:46 |
| 9 | | Valium? | 17:03:48 |
| 10 | A. | Probably -- maybe October. | 17:04:00 |
| 11 | Q. | You don't know? | 17:04:22 |
| 12 | A. | I said October. | 17:04:23 |
| 13 | Q. | Oh, I'm sorry.  I misunderstood. | 17:04:24 |
| 14 | | You took it in October.  Was that because you | 17:04:26 |
| 15 | | were in severe pain? | 17:04:29 |
| 16 | A. | Yes, the only time I take it. | 17:04:31 |
| 17 | Q. | Back pain? | 17:04:33 |
| 18 | A. | Menstrual cramps. | 17:04:34 |
| 19 | Q. | Any other times you can think of specifically? | 17:04:38 |
| 20 | A. | Well, to be able to receive my medications, I | 17:04:46 |
| 21 | | have to have them in my system for my doctor. | 17:04:50 |
| 22 | Q. | I don't understand. | 17:04:56 |
| 23 | A. | They have to be in my system for me to be able | 17:04:58 |
| 24 | | to keep receiving them. | 17:05:01 |
| 25 | Q. | How -- how does that work? | 17:05:06 |

| | | |
|---|---|---|
| 1 | A.   You have to ingest one, and it has to show up | 17:05:08 |
| 2 | in your -- in your urine. | 17:05:13 |
| 3 | Q.   So in order to continue receiving your Norco | 17:05:17 |
| 4 | and Valium prescriptions, you have to take at least a | 17:05:21 |
| 5 | little so that you pop positive for it at the doctor's | 17:05:23 |
| 6 | office? | 17:05:28 |
| 7 | A.   Yes. | 17:05:29 |
| 8 | Q.   So how often do you get that prescription | 17:05:29 |
| 9 | filled? | 17:05:29 |
| 10 | A.   Once a month. | 17:05:30 |
| 11 | Q.   And so you've taken one at least once a | 17:05:31 |
| 12 | month -- one Norco, one Valium at least once a month | 17:05:33 |
| 13 | since 1998? | 17:05:37 |
| 14 | A.   No. | 17:05:39 |
| 15 | Q.   How often do you -- do you take -- | 17:05:43 |
| 16 | A.   This is something that just started this year | 17:05:45 |
| 17 | where my doctor said that because of all the celebrity | 17:05:49 |
| 18 | deaths you have to be tested.  I've never been tested | 17:05:53 |
| 19 | before. | 17:05:57 |
| 20 | Q.   When did that begin? | 17:05:57 |
| 21 | A.   January of this year. | 17:05:59 |
| 22 | Q.   So after your employment with Goodfellow | 17:06:01 |
| 23 | ended? | 17:06:03 |
| 24 | A.   Mm-hmm.  Excuse me.  Yes. | 17:06:04 |
| 25 | Q.   Have you ever sold your Norco or Valium? | 17:06:14 |

Ben Hyatt Certified Deposition Reporters
888.272.0022    818.343.7040    Fax 818.343.7119    www.benhyatt.com

| | | | |
|---|---|---|---|
| 1 | A. | Yes. | 17:06:18 |
| 2 | Q. | To who? | 17:06:18 |
| 3 | A. | I have a friend who I've been knowing for | 17:06:23 |
| 4 | several years. | | 17:06:31 |
| 5 | Q. | How much do you sell to him? | 17:06:36 |
| 6 | A. | Excuse me? | 17:06:39 |
| 7 | Q. | How much do you sell to him? | 17:06:40 |
| 8 | A. | All of them, except for I keep a couple just | 17:06:43 |
| 9 | in case I have an attack. | | 17:06:47 |
| 10 | Q. | How much do you sell them for? | 17:06:49 |
| 11 | | MR. CAINE: You know what, Counsel, why don't | 17:06:56 |
| 12 | we hold on one second.  Let's go off the record for a | | 17:06:58 |
| 13 | minute. | | 17:07:01 |
| 14 | | THE VIDEOGRAPHER: Do you agree? | 17:07:04 |
| 15 | | MR. LORDAN: Sure.  Let's go off the record. | 17:07:06 |
| 16 | | THE VIDEOGRAPHER: This marks the end of | 17:07:07 |
| 17 | Media 6, Volume I, in the Deposition of Trina Hill.  The | | 17:07:07 |
| 18 | time is 5:07, and we're off the record. | | 17:07:10 |
| 19 | | (Recess taken from 5:07 p.m. to 5:46 p.m.) | 17:07:12 |
| 20 | | THE VIDEOGRAPHER: This marks the beginning of | 17:45:50 |
| 21 | Media 7, Volume I, in the Deposition of Trina Hill.  The | | 17:45:52 |
| 22 | time is 5:46, and we are on the record. | | 17:45:56 |
| 23 | | MR. CAINE: Okay.  So we went off the record, | 17:46:01 |
| 24 | and I had conversations with both counsel and with my | | 17:46:03 |
| 25 | client.  And, for the record, I am going to move to | | 17:46:07 |

| | | |
|---|---|---|
| 1 | strike the last four questions that were answered | 17:46:11 |
| 2 | starting with, Have you ever sold, which in the rough | 17:46:18 |
| 3 | version was around 190, 15, and then there were three | 17:46:21 |
| 4 | questions after that, two of which were the same | 17:46:25 |
| 5 | question, but only answered one time. | 17:46:28 |
| 6 | So I'm going to move to strike it on the basis | 17:46:30 |
| 7 | that the witness has Constitutional rights with respect | 17:46:33 |
| 8 | to those answers -- or those questions, and I think | 17:46:38 |
| 9 | there was some confusion about whether those rights | 17:46:43 |
| 10 | should be asserted.  I think she should have the | 17:46:48 |
| 11 | opportunity to do so, and that's the basis for the | 17:46:51 |
| 12 | motion. | 17:46:57 |
| 13 | With that said, please proceed. | 17:46:58 |
| 14 | MR. LORDAN:  And to that end, just to address | 17:47:01 |
| 15 | that on the record, my intention at this point would be | 17:47:05 |
| 16 | to move to compel any further discussions and any | 17:47:06 |
| 17 | further questions and oppose your motion to strike. | 17:47:11 |
| 18 | We're certainly entitled to this evidence as both | 17:47:13 |
| 19 | evidence of wages earned post-separation as well as | 17:47:16 |
| 20 | contributing to any sort of emotional distress claim. | 17:47:21 |
| 21 | So we'll clearly meet and confer, but ultimately this | 17:47:23 |
| 22 | will be the subject of a motion to compel and in | 17:47:27 |
| 23 | opposition to your motion to strike. | 17:47:27 |
| 24 | Q.   Ms. Hill, you understand you're still under | 17:47:32 |
| 25 | oath? | 17:47:35 |

Trina Hill - 12/20/2018

| | | |
|---|---|---|
| 1 | A.  Yes. | 17:47:35 |
| 2 | Q.  Is there any reason why you cannot give your | 17:47:36 |
| 3 | best, complete, most accurate testimony today? | 17:47:39 |
| 4 | A.  No. | 17:47:41 |
| 5 | MR. LORDAN:  There was a question on the | 17:47:41 |
| 6 | record before we took our break.  I'd like the court | 17:47:44 |
| 7 | reporter to read it back into the record. | 17:47:46 |
| 8 | MR. CAINE:  And I'm sorry.  While we're doing | 17:47:56 |
| 9 | that -- before you do that, in case my motion wasn't | 17:47:56 |
| 10 | clear, I'm not seeking to strike the questions.  I'm | 17:47:58 |
| 11 | seeking to strike the answers that were given to those | 17:48:01 |
| 12 | questions on the basis that I articulated. | 17:48:04 |
| 13 | MR. LORDAN:  Understood. | 17:48:06 |
| 14 | (Record read by the court reporter.) | 17:48:07 |
| 15 | THE WITNESS:  I'm going to exercise my right | 17:48:22 |
| 16 | not to -- my Fifth Amendment right not to answer that | 17:48:24 |
| 17 | question on the grounds of self-incrimination. | 17:48:28 |
| 18 | MR. LORDAN:  Q.  Ms. Hill, are you going to | 17:48:32 |
| 19 | exercise your Fifth Amendment right with regard to all | 17:48:34 |
| 20 | further questions regarding your possession or sale of | 17:48:38 |
| 21 | Norco and Valium? | 17:48:42 |
| 22 | A.  Yes. | 17:48:43 |
| 23 | MR. LORDAN:  I'll just put it on the record | 17:48:46 |
| 24 | that this will be the subject of my motion to compel | 17:48:52 |
| 25 | that I referenced earlier. | 17:48:56 |

Page 208

| | | |
|---|---|---|
| 1 | Q.  Ms. Hill, will you refuse to provide testimony | 17:48:58 |
| 2 | with regard to the money you've earned after your | 17:49:05 |
| 3 | separation from Goodfellow Top Grade? | 17:49:11 |
| 4 | MR. CAINE:  I'm -- okay.  Let -- I think that | 17:49:14 |
| 5 | question needs to be more clear -- or at least I'll | 17:49:16 |
| 6 | object to it on the basis that it's vague. | 17:49:19 |
| 7 | MR. LORDAN:  Well -- | 17:49:22 |
| 8 | MR. CAINE:  I mean, I think she's testified -- | 17:49:23 |
| 9 | sorry to cut you off -- | 17:49:24 |
| 10 | MR. LORDAN:  Sure. | 17:49:27 |
| 11 | MR. CAINE:  -- but I think she's testified | 17:49:27 |
| 12 | about money that she's earned from some of the jobs that | 17:49:27 |
| 13 | you've asked her about; so maybe you can ask a more | 17:49:31 |
| 14 | specific question. | 17:49:34 |
| 15 | MR. LORDAN:  Sure.  Let's give it a shot. | 17:49:35 |
| 16 | Q.  After you left Goodfellow Top Grade, Ms. Hill, | 17:50:04 |
| 17 | you testified to a number of positions that you've held | 17:50:08 |
| 18 | with, I believe, EBI and A & B Construction.  Is that | 17:50:12 |
| 19 | correct? | 17:50:19 |
| 20 | A.  A number of positions, no; only one position. | 17:50:20 |
| 21 | Q.  With each? | 17:50:23 |
| 22 | A.  Flagger. | 17:50:24 |
| 23 | Q.  But you did work for both of those companies | 17:50:26 |
| 24 | after you left Goodfellow Top Grade; correct? | 17:50:28 |
| 25 | A.  Yes. | 17:50:31 |

Ben Hyatt Certified Deposition Reporters
888.272.0022   818.343.7040   Fax 818.343.7119   www.benhyatt.com

| | | |
|---|---|---|
| 1 | Katherine Sullivan, HR Generalist, at Goodfellow. | 20:43:24 |
| 2 | You'll see on this next page that you signed | 20:43:29 |
| 3 | for it on the Return Receipt Request.  Is that your | 20:43:29 |
| 4 | signature? | 20:43:33 |
| 5 |    A.   Yes. | 20:43:38 |
| 6 |    Q.   This indicated that you did not qualify for | 20:43:39 |
| 7 | Family Medical Leave; correct? | 20:43:41 |
| 8 |    A.   That's what it says. | 20:43:46 |
| 9 |    Q.   And that the company considered you on an | 20:43:47 |
| 10 | unpaid leave of absence; correct? | 20:43:50 |
| 11 |    A.   Yes. | 20:43:53 |
| 12 |    Q.   At what point did you communicate to | 20:43:54 |
| 13 | Goodfellow that you were not going to be returning to | 20:43:56 |
| 14 | work? | 20:43:59 |
| 15 |    A.   I mentioned it in a text message. | 20:44:00 |
| 16 |    MR. LORDAN:  I think we've done about as much | 20:44:08 |
| 17 | as we're going to do here today. | 20:44:12 |
| 18 | I'll put on the record that there were a | 20:44:15 |
| 19 | number of areas that we talked about where Ms. Hill | 20:44:17 |
| 20 | claimed her Fifth Amendment right against | 20:44:23 |
| 21 | self-incrimination, and we didn't get to, and therefore, | 20:44:26 |
| 22 | I intend to move to compel and to reopen this deposition | 20:44:29 |
| 23 | subject to that and any documents that might be | 20:44:32 |
| 24 | subsequently produced that should have been produced | 20:44:37 |
| 25 | before today.  We may need to address those topics. | 20:44:39 |

| | | |
|---|---|---|
| 1 | You can carry on.  You can answer. | 20:46:46 |
| 2 | MR. CAINE:  Objection noted. | 20:46:49 |
| 3 | And that's all the questions that I have. | 20:46:52 |
| 4 | THE VIDEOGRAPHER:  She answered; right? | 20:46:56 |
| 5 | MR. LORDAN:  She did. | 20:46:58 |
| 6 | THE VIDEOGRAPHER:  All right.  This marks the | 20:46:59 |
| 7 | end of Media 12, Volume I, and concludes today's | 20:47:00 |
| 8 | Deposition of Trina Hill.  The total number of | 20:47:05 |
| 9 | videotapes used was 12 media files, and we are going off | 20:47:08 |
| 10 | the record. | 20:47:13 |
| 11 | MR. LORDAN:  Real quick, before we go off the | 20:47:14 |
| 12 | record, do you mind if we put a stipulation on how long | 20:47:14 |
| 13 | you have to review? | 20:47:16 |
| 14 | MR. CAINE:  Yeah.  Well, so I should ask -- I | 20:47:19 |
| 15 | should say that we will exercise the right to review and | 20:47:21 |
| 16 | sign.  I don't think we need a stipulation.  It's in the | 20:47:24 |
| 17 | rules. | 20:47:27 |
| 18 | MR. LORDAN:  Right.  My thought was simply to | 20:47:27 |
| 19 | the extent that we -- | 20:47:30 |
| 20 | How fast or how long to turn around the copy | 20:47:32 |
| 21 | of the transcript? | 20:47:36 |
| 22 | MR. CAINE:  Why don't we go off the record, | 20:47:38 |
| 23 | and then we can go back on the record, if you want to. | 20:47:39 |
| 24 | MR. LORDAN:  Let's just -- never -- | 20:47:43 |
| 25 | That's fine.  We'll just stipulate that if the | 20:47:44 |

```
 1   original is lost and destroyed, a copy can be used in        20:47:48
 2   its place.  And I think that's all I needed to do.           20:47:51
 3              Is that fine?                                     20:47:58
 4              MR. CAINE:  If the original of the transcript     20:47:59
 5   is lost?                                                     20:48:00
 6              MR. LORDAN:  Right, the original to be            20:48:01
 7   maintained by the court reporter's office.                   20:48:03
 8              MR. CAINE:  That's fine.  So stipulated.          20:48:05
 9              THE VIDEOGRAPHER:  And this marks the end of      20:48:07
10   Media 12, Volume I of Trina Hill and concludes today's       20:48:09
11   deposition.  The time is 8:48, and we are off the            20:48:14
12   record.                                                      20:48:17
13              (Proceedings concluded at 8:48 p.m.)              20:48:17
14
15
16
17
18
19
20
21
22
23
24
25
```