J. DAVID HADDEN (CSB No. 176148)
dhadden@fenwick.com
FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone:	650.988.8500
Facsimile:	650.938.5200

PHILLIP J. HAACK (CSB No. 262060)
phaack@fenwick.com
ERIC B. YOUNG (CSB No. 318754)
eyoung@fenwick.com
CHIEH TUNG (CSB No. 318963)
ctung@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:	415.875.2300
Facsimile:	415.281.1350

Attorneys for Plaintiff
Trina Hill

JOSEPH R. LORDAN, SB# 265610
joseph.lordan@lewisbrisbois.com
ALLISON L. SHRALLOW, SB# 272924
allison.shrallow@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD SMITH LLP
333 Bush Street, Suite 1100
San Francisco, CA 94104
Telephone:	415.362.2580
Facsimile:	415.434.0882

Attorneys for Defendant
Goodfellow Top Grade

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| TRINA HILL,<br><br>   Plaintiff,<br><br> v.<br><br>GOODFELLOW TOP GRADE,<br><br>   Defendant. | Case No.: 4:18-cv-01474-HSG (KAW)<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date: June 4, 2019<br>Time: 2:00 p.m.<br>Courtroom: 2, 4th Floor<br>Judge: Hon. Haywood S. Gilliam, Jr.<br>Trial Date: Sept. 9, 2019<br>Filed: March 6, 2018 |

Pursuant to Civil Local Rule 16-9 and the Court's Standing Order, the parties respectfully submit the following Joint Case Management Statement.

**I.      JURISDICTION AND SERVICE**

The Court's has subject matter jurisdiction over this dispute under 28 U.S.C. § because Plaintiffs' claims arise under Title VII of the Civil Rights Act of 1964. No parties remain to be served.

## II. FACTS

**Plaintiff's Statement**

Plaintiff Trina Hill, an African-American female construction worker was dispatched by her union to perform flagging work for Defendant Goodfellow Top Grade, a subcontractor at the grounds of the new Warriors stadium. Plaintiff alleges that:

- Another employee started false rumors about Plaintiff and another female (Diana Monroe) about being unclean, which led another employee to claim that Plaintiff was under investigation, which was false.
- Within days of being dispatched to the job site, she and Monroe were demoted by being moved to the night shift and received lower pay.  Plaintiff and Monroe claim they were the only two employees rotated to night shift out of 60-70+ employees.
- When it was time for them to rotate onto the day shift, as had been promised, they were told that there was no flagging work for them to do and that they should not come back to work for over a week. Plaintiff called the union and received no support.
- The next day, at least one man was flagging at the site, even though, unlike Plaintiff, he was not certified as a flagger.
- Shortly after being allowed to come back to work, Plaintiff and Monroe were flashed by a subcontractor co-worker after being asked about what appeared to be a drawing of a penis at their job site.  After Plaintiff complained to the general contractor on the project, who insisted that the person be fired, Plaintiff and her co-worker were subject to continued and retaliatory harassment.
- In an attempt to get Plaintiff to quit, she was repeatedly instructed to work on dust control despite her known respiratory disability.  Several people on the job site, including people superior to her knew about Plaintiff's respiratory condition.
- Defendant replaced all of the African-American flaggers with a non-African-American crew and falsely claimed that this replacement was demanded by the general contractor.
- After Plaintiff was threatened by another coworker, Plaintiff was written up for insubordination. Eventually, her doctor placed her on leave due to stress.

**Defendant's Statement**

Defendant Goodfellow Top Grade Construction, LLC is a construction company that specializes in performing earthwork, excavation, site preparation, blasting, crushing, grading, and paving.  On or around March 15, 2017, Defendant entered into a subcontract with General Contractor Mortenson Clark for excavation work at the Chase Center (*i.e.*, the new Golden State Warriors arena) in the San Francisco.  On or around May 8, 2017, Defendant contacted Local #261 (Laborers' International Union of Norther America) for General Laborers.  On May 9, 2017, Local #261 dispatched General Laborer Plaintiff Trina Hill to Defendant.  General Laborers performed dust control, flagging, spotting, and/or other manual labor at the Chase Center.

On or around May 9, 2017, Plaintiff began working for Defendant.  Initially, Plaintiff reported directly to Foreman Tim Sardam, worked the day shift, and earned $29.04 per hour.  Mr. Sardam assigned Plaintiff to perform flagging duties (*i.e.,* directing incoming and outgoing trucks to avoid traffic congestion) at the Chase Center.

About two weeks into Plaintiff's employment, Defendant began transitioning to almost 24 hour a day operations.  As a result, Defendant needed to assign its General Laborers to one of three shifts: the night shift (from approximately 5:30 p.m. to 1:00 a.m.), the early morning shift (from approximately 3:30 a.m. to 1:00 p.m.) and the day shift (from approximately 6:00 a.m. to 4:00 p.m.).  Mr. Sardam went through his list of General Laborers and randomly assigned one third of them to the night shift, another third of them to the early morning shift, and the last third of them to the day shift.  Mr. Sardam randomly assigned Plaintiff to the night shift.  Once Mr. Sardam created his list, he went up to each of the General Laborers, including Plaintiff, and asked whether each of them could work their new assigned shift.  To the extent any General Laborer indicated he or she could not work his or her new scheduled shift for any reason, then Mr. Sardam intended to accommodate this individual's request, to the extent possible.  When Mr. Sardam approached Plaintiff about working the night shift, Plaintiff did not complain or express any issue with working the night shift.

On approximately May 28, 2017, Plaintiff began working the night shift and reporting directly to Leonard Garcia.  According to the union contract, Plaintiff earned $3.00 more per hour

(*i.e.,* $32.04) working the night shift.  Mr. Garcia temporarily assigned Plaintiff to flagging duties during the night shift.  On or around June 28, 2017, Mr. Garcia informed Plaintiff that there would be no off-hauling of dirt and/or hazardous materials at night between June 29 and July 5, 2017 so there would be no flagging work during the night shift at that time.  Mr. Garcia informed Plaintiff that she could work during the day shift but that he did not have any influence on whether she would be performing flagging, spotting, dust control, or tire washing duties since he was only in charge of the night shift.   Plaintiff told Mr. Garcia that she refused to perform any other work but flagging (despite being dispatched as a General Laborer and not specifically as a Flagger).  As a result, Plaintiff decided not to work between June 29 and July 5, 2017.

On or around July 6, 2017, Plaintiff returned to work on the day shift performing flagging duties.  On or around July 16, 2017, Plaintiff complained to Steve Humphries (Senior Safety Manager at Clark) that another subcontractor's (Tri-Valley) employee, Michael Bounds, allegedly pulled down his pants and exposed his buttocks to Plaintiff on the jobsite.  When Clark informed Defendant of this alleged incident, Defendant immediately removed Mr. Bounds from the jobsite and began interviewing witnesses and collecting statements to determine what had occurred.  Despite varying witness accounts ranging from Mr. Bounds was merely adjusting his oversized pants to Mr. Bounds intentionally exposed his buttocks, Defendant did not allow Mr. Bounds to return to the jobsite.

In early September 2017, Plaintiff began reporting directly to Mr. Garcia again.  Around this time, Mortensen Clark expressed discontent with Defendant's flagging operations.  At that time, there were flaggers from two different companies:  Defendant and Statewide.  Statewide specializes in supplying well-trained and dedicated professional union employees to perform traffic control services.  Because Statewide specializes in traffic control, Defendant determined it would be best to have Statewide handle all of the flagging operations at the Chase Center.  Mr. Garcia informed his employees that Statewide would be taking over flagging operations and that Defendant would be assigning its General Laborers who previously worked flagging positions to other positions (such as spotting and/or dust control).  Plaintiff was upset by this news and insisted to Mr. Garcia that she was dispatched solely as a flagger (which again was not true).

Plaintiff later walked away from her gate towards the administrative offices, effectively abandoning her post, which caused safety concerns.

A few days later, someone called the Aborginal Blackmen United and complained about Statewide taking over flagging operations. At that point, Defendant learned from Prentiss Jackson, Senior Manager at Clark, that unbeknownst to Defendant, another flagging subcontractor had the right of first refusal for flagging work under the Mortensen Clark contract for the Chase Center. Because Defendant was unfamiliar with this other subcontractor, it decided to return its own employees to flagging positions.

On September 18, 2017, Plaintiff got into a verbal altercation with one of Defendant's employees, Maurice Haskell, as a result of them not effectively communicating with each other. Both Plaintiff and Mr. Haskell screamed and cursed at each other. Plaintiff called Mr. Garcia, and Mr. Garcia and Mr. Sardam came to the gate to investigate. Plaintiff informed them what had occurred and indicated that she felt uncomfortable around Mr. Haskell. Mr. Garcia told Plaintiff that he would be interviewing her, Mr. Haskell, and Clark employee, Anna Sivao to determine what had occurred but that in the meantime he wanted to temporarily move Plaintiff to a nearby gate because she felt uncomfortable working next to Mr. Haskell. In response, Plaintiff angrily asked "Why do I have to move?" and refused to move gates. After approximately five minutes of Plaintiff refusing to move to the other gate, Plaintiff abandoned her post again by walking towards the administrative offices.

Mr. Garcia determined through his interviews that it was not clear who started the altercation as between Mr. Haskell and Plaintiff. It appeared that both parties were in the wrong. However, since witnesses corroborated that Mr. Haskell had called Claimant a curse word, Defendant gave him a verbal warning.

Next, Mr. Garcia spoke with Mr. Sardam and Project Engineer, Sean Lennan, about Plaintiff's refusal to obey his order to move to the next gate and Plaintiff walking away from her post, which had serious safety repercussions. They determined that Mr. Garcia should issue Plaintiff a written warning and a one-day suspension as a result of her insubordination and job abandonment, which Mr. Garcia did that day. Plaintiff signed the written warning and did not

1  contest its accuracy.

2  During Plaintiff's one-day suspension, Plaintiff came onto the job site and caused a
3  disturbance by yelling and cursing at Defendant's employees. She was asked to leave.

4  On September 20, 2017, or the day Plaintiff was expected to return to work after her one-
5  day suspension, Plaintiff provided a doctor's note to Defendant indicating that she would be
6  taking a leave of absence between September 20, 2017 and December 20, 2017. In response,
7  Defendant sent Plaintiff a certified letter to inform her that it had received her doctor's note, she
8  did not qualify for FMLA leave, and any request to return to work would be evaluated based on
9  staffing needs and her ability to perform the essential functions of open positions with or without
10 reasonable accommodations.

11 Plaintiff never contacted Defendant to return to work after September 20, 2017. Rather,
12 Plaintiff began working for A & B Construction one week after she submitted her doctor's note to
13 Defendant. On December 8, 2017, Defendant ceased its flagging operations at the Chase Center.

14 **III. LEGAL ISSUES**

15 Whether Defendant discriminated or harassed Plaintiff based on her race or sex under
16 Title VII.

17 Whether Defendants' actions or lack of action subjected Plaintiff to a hostile work
18 environment, also under Title VII.

19 Whether Defendant retaliated against Plaintiff for engaging in protected activity.

20 **IV. MOTIONS**

21 The Court denied Defendant's Rule 12(b)(6) motion to dismiss on February 14. Dkt. 56.

22 The Court granted in part Defendant's motion to compel additional deposition time of
23 Plaintiff, limiting the testimony "to those documents produced after Plaintiff's deposition." Dkt.
24 65.

25 The Court granted Plaintiff's motion to compel "demographic information or documents
26 sufficient to show the number of African Americans Goodfellow employed and terminated each
27 month from October to December 2017…." Dkt. 66.

28 Plaintiff has retained new counsel. She intends to make a motion under Federal Rule of

Civil Procedure 42 to consolidate this action with case filed by Diana Monroe, No. 3:18-cv-7673-LB, also pending before this District.

Defendant intends to oppose this motion on the grounds that consolidating these actions would result in undue delay given that Plaintiff's case is set for trial in September 2019, while Ms. Monroe just filed her lawsuit in the beginning of this year, no discovery or depositions has been undertaken, and the case has been stayed for months pending appointment of her counsel.

## V.  AMENDMENT OF PLEADINGS

The parties do not expect to file amended pleadings. Plaintiff does not anticipate the need to amend following consolidation, if the Court so orders.

## VI.  EVIDENCE PRESERVATION

The parties certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information, and have taken reasonable and proportionate steps to preserve evidence relevant to the issues reasonably evident in this action.

## VII.  DISCLOSURES

This case is governed by General Order No. 71—a pilot program for initial discovery protocols for employment cases alleging adverse actions in harassment/hostile work environment claims in effect as of February 1, 2018. General Order No. 71 states that it supersedes the parties' obligations to provide initial disclosures pursuant to the Federal Rule of Civil Procedure 26(a)(1). The parties exchanged documents according to the General Order, and used them to prepare the discovery plan in this case. Discovery in this case is now closed.

## VIII.  DISCOVERY

Both parties have conducted depositions and have exchanged documents pursuant to document requests. Discovery is now closed, and the parties do not anticipate any additional discovery unless the Court grants Plaintiff's anticipated motion to consolidate, in which case additional deposition, written, and expert discovery will be limited to that action.

## IX.  CLASS ACTIONS

This is not a class action.

**X.     RELATED CASES**

*Monroe v. Goodfellow Top Grade*, No. No. 3:18-cv-7673-LB (N.D. Cal., filed Dec. 21, 2018).

**XI.    RELIEF**

Plaintiff seeks equitable relief including reinstatement; compensatory relief including back pay, front pay, and damages for emotional distress and mental suffering; costs and attorneys' fees as allowed by law; punitive damages; and any other relief the Court deems proper.

Defendant denies that Plaintiff is entitled to any of the relief she seeks.

**XII.   SETTLEMENT AND ADR**

The parties engaged in settlement discussions on February 21, 2019 before Magistrate Judge Spiro. They were unable to settle the case at that time. Dkt. 61.

**XIII.  CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

Defendant filed a Declination of Magistrate Judge Jurisdiction on April 23, 2018.

**XIV.   OTHER REFERENCES**

The parties are not aware of other matters at this time that might facilitate the just, speedy, and inexpensive disposition of this matter.

**XV.    NARROWING OF ISSUES**

Plaintiff is not pursuing a disability discrimination claim against Defendant. The parties do not anticipate any further narrowing of the issues for trial.

**XVI.   EXPEDITED TRIAL PROCEDURE**

The parties do not believe that this case is suitable for the Expedited Trial Procedure of General Order 64.

**XVII.  SCHEDULING**

The following reflects the existing case schedule.

| | |
|---|---|
| Close of Expert Discovery | May 29, 2019 |
| Pretrial Conference | August 27, 2019 |
| Trial | September 9, 2019 |

Plaintiff plans to recommend staying proceedings in this case while the related case

1    progresses through discovery, so that the schedules align for purposes of a consolidated trial.

2           Defendant does not agree with this recommendation in light of Ms. Monroe's case being in its infancy and Plaintiff's case being already set for trial in September 2019. The trial date for Ms. Monroe's case is set forth May 11, 2020 but will likely be rescheduled to a later date in light of the Court imposing a stay in that matter pending her retention of counsel. The case has been stayed for a few months. Therefore, trial in the Monroe matter will more likely to be in August 2020 or nearly a year after Plaintiff's September 2019 trial date.

## XVIII. TRIAL

The parties estimate that the trial in this matter should take 5–7 days.

## XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Plaintiff certifies under Civil Local Rule 3-15(a)(2) that no such interest is known other than that of the named parties to this action.

Defendant filed its Certification of Interested Entities or Parties on April 20, 2018. In it, Defendant disclosed that GBI Holding Co. and Brian Gates have either a financial or non-financial

## XX. PROFESSIONAL CONDUCT

All the attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

//

| | | |
|---|---|---|
| 1 | Dated:   May 28, 2019 | FENWICK & WEST LLP |
| 2 | | |
| 3 | | By:  */s/ Eric B. Young*<br>       J. David Hadden |
| 4 | | Phil Haack |
|   | | Chieh Tung |
| 5 | | Eric B. Young |
| 6 | | Attorneys for Plaintiff |
| 7 | | Trina Hill |
| 8 | | |
|   | Dated: May 28, 2019 | LEWIS BRISBOIS BSIGAARD & SMITH LLP |
| 9 | | |
| 10 | | By:  */s/ Allison L. Shrallow* |
|    | |       Joseph R. Lordan |
| 11 | |       Allison L. Shrallow |
| 12 | | Attorneys for Defendant Goodfellow Top |
| 13 | | Grade Construction LLC |

**ATTORNEY ATTESTATION**

I, Eric B. Young, attest that concurrence in the filing of this document has been obtained from any signatories indicated by a "conformed" signature (/s/) within this e-filed document. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| Dated: May 28, 2019 | FENWICK & WEST LLP |
| | |
| | By: */s/ Eric B. Young* |
| |       Eric B. Young |

## [PROPOSED] CASE MANAGEMENT ORDER

Upon consideration of the Parties' Joint Case Management Statement, the foregoing joint statement is adopted by this Court as the Case Management Order in this action and shall govern all further proceedings in this action.

**IT IS SO ORDERED.**

Dated: _____, 2019

_____
Honorable Haywood S. Gilliam, Jr.