**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JOSEPH R. LORDAN, SB# 265610
  Email: Joseph.Lordan@lewisbrisbois.com
ALLISON L. SHRALLOW, SB#272924
  Email: Allison.Shrallow@lewisbrisbois.com
333 Bush Street, Suite 1100
San Francisco, California 94104-2872
Telephone: 415.362.2580
Facsimile:  415.434.0882

Attorneys for Defendant GOODFELLOW TOP GRADE CONSTRUCTION, LLC (erroneously sued as Goodfellow Top Grade)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| TRINA HILL, | CASE NO. 4:18-cv-01474-HSG |
| Plaintiff, | **DEFENDANT GOODFELLOW TOP GRADE CONSTRUCTION, LLC'S TRIAL BRIEF** |
| vs. | |
| GOODFELLOW TOP GRADE, | |
| Defendant. | Trial Date: September 9, 2019 |

## I. INTRODUCTION

Plaintiff asserts the following claims against Goodfellow:  (1) race discrimination, (2) sex discrimination, (3) race harassment, (4) sex harassment, and (5) retaliation.  Goodfellow denies all of these claims and has a good faith, non-discriminatory and non-retaliatory reason for each and every alleged adverse action.

## II. FACTS

Goodfellow was an excavating subcontractor at the Chase Center jobsite chosen by the general contractor, Mortensen Clark Joint Venture.  Pursuant to Goodfellow's subcontract with the general contractor, Goodfellow had a goal of 50% local hire (*i.e*., employees who resided in the City or County of San Francisco) for this project.  Goodfellow took this goal seriously and partnered with various unions and organizations to meet it.  On or around May 8, 2017, Goodfellow requested the Local #261 to dispatch local general laborers to the jobsite.  General

laborers performed all sorts of manual labor activities from spotting, to flagging, to dust control. Local #261 dispatched Plaintiff Trina Hill as a general laborer at the jobsite on May 9, 2017. Plaintiff appeared at Goodfellow's Livermore offices and submitted to a pre-employment drug test, which she somehow passed despite testing positive for marijuana immediately before the start of her employment through a drug test administered by her doctor's office in connection with ongoing prescriptions written to her for controlled medicines (Norco and Valium).[1] Plaintiff lied on her application, including indicating she graduated from Berkeley High School (when she did not) and omitted at least two of her previous employers. She also did not live in San Francisco, and claimed her sister's address as her current home; she should not have been a member of the Local 261.

On May 9, 2017, Plaintiff appeared at the Chase Center jobsite. She was assigned by a Goodfellow foreman to temporarily flag and earned $29.54 per hour during the day shift (which was the only shift at that time). As a general laborer Plaintiff could have been assigned to any other general laborer job duties. About three weeks into Plaintiff's employment, Goodfellow expanded the scope of its operations from twelve hours per day to almost twenty four hours per day. This change necessitated that approximately 40 percent of its employees had to work the night shift, 40 percent had to work the early morning shift, and 20 percent of its employees had to work the day shift. The move to twenty four hour a day operations was discussed during multiple safety meetings so all of Goodfellow's employees were aware that this change would be occurring shortly. Foreman Tim Sardam went through his list of employees and randomly assigned each to one of three respective lists. Plaintiff's name was randomly assigned to the night shift list and Mr. Sardam went up to each and every employee on the night shift list, including Plaintiff, and asked them whether they had any issue with working the night shift. Many employees preferred to work the night shift because Goodfellow paid an extra $3.00 per hour (for a total of $32.54) for working on the night shift. When Mr. Sardam approached Plaintiff on this issue, Plaintiff agreed to this

---

[1] Plaintiff testified that she sold her prescription drugs to a friend of hers and maintained these prescriptions since 1990.



4842-5253-0592.1

2

4:18-cv-01474-HSG

DEFENDANT GOODFELLOW TOP GRADE CONSTRUCTION, LLC'S TRIAL BRIEF

assignment and did not express any concerns or objections to it.  Starting on or around May 28, 2017, Ms. Hill began working on the night shift, reported directly to Leonard Garcia and performed flagging duties.

Between June 29, 2017 and July 5, 2017, there were no off hauling of materials scheduled during the night shift and thus Goodfellow did not have a need for flaggers during the night shift during that period of time.

Mr. Garcia informed Plaintiff that there was other work during the day shift or night shift but Plaintiff indicated she would only perform flagging duties.  Mr. Garcia, who ran the night shift, told Plaintiff that he had no control over what duties she would be assigned to during the day shift.  Plaintiff refused to work any other job duties and opted to not work between June 29, 2017 and July 5, 2017.

Plaintiff returned to work on July 6, 2017 performing flagging duties during the day shift.  On July 13, 2017 Plaintiff complained to the general contractor that another subcontractor's employee (Michael Bounds) intentionally exposed his buttocks to her.  The general contractor alerted Goodfellow and Goodfellow immediately removed Mr. Bounds from the jobsite and conducted an investigation by interviewing Mr. Bounds, Ernie Gunter (another subcontractor's employee), Diana Monroe (Plaintiff's friend and co-worker) and Plaintiff.  The investigation was inconclusive: Mr. Bounds and Mr. Gunter indicated that Mr. Bounds was merely adjusting his oversized pants and did not expose his buttocks to Plaintiff; Ms. Monroe did not indicate that Mr. Bounds exposed his buttocks to Plaintiff, but was merely adjusting his shirt and pants,  and Plaintiff indicated that he intentionally mooned her.  Nonetheless, Mr. Bounds never returned to the jobsite after that day.

In September 2017, the general contractor told Goodfellow that another subcontractor, Statewide, was performing flagging very well on the jobsite.  The general contractor had also been alerting Goodfellow about consistent complaints received from its neighbors regarding Goodfellow's flagging operations from the beginning on Goodfellow's operations at the jobsite (March 2017) to September 2017.  Taken together, Goodfellow determined it would be best for its relationship with the general contractor to remove its employees who were performing flagging

1  duties (who were not all African American) and bring in Statewide (a subcontractor that
2  specializes in flagging and traffic control) to perform its flagging operations (who were not all
3  Hispanic).  Goodfellow alerted its employees who were performing flagging operations of this
4  change and offered each of these employees other job duties.  Only Plaintiff refused to work other
5  job duties, abandoned her post and refused to work the next day.  When Goodfellow later learned
6  the next day about the general contractor granting the right of first refusal to another
7  subcontractor, Goodfellow decided to bring its employees, including Plaintiff, back to flagging
8  duties.
9        On September 18, 2017, Plaintiff was involved in an altercation with her co-worker
10 Maurice Haskell.  Both of them were yelling, swearing at, and threatening each other.  Plaintiff
11 called her supervisor, Mr. Garcia, over (who showed up to the gate with Mr. Sardam) and told Mr.
12 Garcia she felt uncomfortable working next to Mr. Haskell.  Accordingly, Mr. Garcia told Plaintiff
13 to temporarily move to another gate so he could investigate and to make sure that Plaintiff was
14 comfortable.  Plaintiff became enraged that she had to move and swore and yelled at Mr. Garcia
15 and refused to move to the other gate.  Plaintiff then abandoned her post for a second time in a
16 month.  Goodfellow conducted an investigation into the altercation between Plaintiff and Mr.
17 Haskell but could not determine who started it.  Nevertheless, Goodfellow issued Mr. Haskell
18 corrective action for calling Plaintiff a "b****."  Separately, Goodfellow issued Plaintiff
19 corrective action and a one-day suspension based on her insubordination with Mr. Garcia and her
20 abandonment of her post.  Plaintiff did not dispute the warning.
21       The next day (September 19— during Plaintiff's one-day suspension), Plaintiff showed up
22 to the jobsite and caused a disturbance by yelling and swearing at Goodfellow's employees.
23 Plaintiff was asked the leave.  Goodfellow conducted an investigation into this event by
24 interviewing the various witnesses.
25       The following day (September 20), Plaintiff submitted a doctor's note which placed her off
26 work until December 20, 2017.  Goodfellow requested Plaintiff contact it when she was able to
27 return to work with or without restrictions, but she failed to do so.  Plaintiff did not contact
28 Goodfellow about returning to work at any time nor did she submit another doctor's note,

effectively abandoning her position. Rather, Plaintiff began working for another employer, A & B Construction the next week, on or around September 25, 2017

## III. LEGAL ANALYSIS

### A. Race and/or Sex Discrimination

Plaintiff cannot establish that Goodfellow took any of the purported adverse employment actions against her based on her sex, race, and/or engagement in protected activity. She has no direct evidence and her circumstantial evidence is weak. Notably, Plaintiff was temporarily assigned to the night shift, yet there were other Goodfellow employees who were African American women who were assigned to either the early-morning or day shift. Thus, Plaintiff cannot establish that her re-assignment was based on her protected characteristics. The same is true for Plaintiff's claim that Goodfellow removed all of its flaggers from flagging positions in an attempt to discriminate against her based on her race or sex. First, not all of Goodfellow's flaggers were African American. Second, Goodfellow did not know the race and/or sex of Statewide's employees who were assigned to flag for one day at the Chase Center. Third, not all of Statewide's employees were Hispanic (as Plaintiff claims). Accordingly, Plaintiff cannot establish race or sex discrimination.

### B. Race and/or Sex Harassment

Plaintiff admitted at deposition that no one made any comment to her about her race and/or sex. Further, because Goodfellow took prompt, remedial action in response to learning about Plaintiff's sexual harassment complaint (concerning Mr. Bounds), Goodfellow cannot be liable under Title VII for co-worker harassment.

### C. Retaliation

Plaintiff's claim that Goodfellow retaliated against her for filing a sexual harassment complaint is tangential at best. On July 13, 2017, Plaintiff complained about another subcontractor's employee allegedly "mooning" her and Goodfellow promptly removed him from the jobsite. On September 18, 2017, Goodfellow issued Plaintiff corrective action based on her being insubordinate with her supervisor and abandoning her post for a second time in a month. Plaintiff cannot establish a causal connection between these two events. Moreover, plaintiff

abandoned her position by failing to return to work following her one-day suspension, taking another job elsewhere.

## IV. DAMAGES

Plaintiff's damages are minimal as she was only off work for approximately four months and has been working other construction jobs earning approximately the equivalent hourly pay. At all relevant times, Goodfellow had approximately 400 employees, so Plaintiff's damages are capped at $200,000.  42 U.S.C. § 1981a(b)(3).  Further, Goodfellow has an after-acquired evidence defense based on Plaintiff's admitted illegal activity (selling her prescription drugs), misrepresentations of her residence and educational and employment background, admitted use of marijuana both immediately before and during her employment with Goodfellow and evidence that Plaintiff cheated on her pre-employment drug test.  Accordingly, even if Goodfellow is found liable, Plaintiff may still recover little to no damages.

DATED: August 13, 2019         LEWIS BRISBOIS BISGAARD & SMITH LLP


By: */s/Allison L. Shrallow*
Joseph R. Lordan
Allison L. Shrallow
Attorneys for Defendant GOODFELLOW TOP GRADE CONSTRUCTION, LLC  (erroneously sued as Goodfellow Top Grade)



# FEDERAL COURT PROOF OF SERVICE

*Trina Hill v. Goodfellow Top Grade*

U.S. District Court-ND, Oakland Division, Case No. 4:18-CV-01474-HSG

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

At the time of service, I was over 18 years of age and not a party to the action. My business address is 333 Bush Street, Suite 1100, San Francisco, CA 94104-2872. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On August 13, 2019, I served the following document(s):  **DEFENDANT GOODFELLOW TOP GRADE CONSTRUCTION, LLC'S TRIAL BRIEF**

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

**SEE ATTACHED SERVICE LIST**

The documents were served by the following means:

☒ (BY COURT'S CM/ECF SYSTEM)  Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on August 13, 2019, at San Francisco, California.

*/s/Berenice Barragan*
Berenice Barragan



**SERVICE LIST**
*Trina Hill v. Goodfellow Top Grade*
U.S. District Court-ND, Oakland Division, Case No. 4:18-CV-01474-HSG

| | |
|---|---|
| J. David Hadden<br>Lynn H. Pasahow<br>FENWICK & WEST LLP<br>801 California Street<br>Mountain View, CA 94041 | *Attorneys for Plaintiff TRINA HILL*<br><br>Telephone: 650.988.8500<br>Facsimile:  650.938.5200<br>Email: dhadden@fenwick.com<br>           lpasahow@fenwick.com |
| Matthew B. Becker<br>Eric B. Young<br>Cheih Tung<br>FENWICK & WEST LLP<br>555 California Street, 12th Floor<br>San Francisco, CA 94104 | *Attorneys for Plaintiff TRINA HILL*<br><br>Telephone: 415.875-2300<br>Facsimile: 415.281.1350<br>Email: mbecker@fenwick.com<br>           eyoung@fenwick.com<br>           ctung@fenwick.com |