**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JOSEPH R. LORDAN, SB# 265610
  Email: Joseph.Lordan@lewisbrisbois.com
ALLISON L. SHRALLOW, SB#272924
  Email: Allison.Shrallow@lewisbrisbois.com
333 Bush Street, Suite 1100
San Francisco, California 94104-2872
Telephone: 415.362.2580
Facsimile:  415.434.0882

Attorneys for Defendant GOODFELLOW TOP GRADE CONSTRUCTION, LLC (erroneously sued as Goodfellow Top Grade)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| TRINA HILL,<br><br>         Plaintiff,<br><br>    vs.<br><br>GOODFELLOW TOP GRADE,<br><br>         Defendant. | CASE NO. 4:18-cv-01474-HSG<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 1 REGARDING PRESCRIBED MEDICATION AND JEWELRY**<br><br>Trial Date: September 9, 2019 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff is generally correct that her <u>use</u> of prescription mediations (Norco and Valium) is not relevant to her claims or Goodfellow's defenses, except as it applies to her claim for emotional distress. What is relevant is Plaintiff's <u>illegal sale</u> of prescription mediation (Norco and Valium) and her <u>use and/or consumption of marijuana</u> both a day before and contemporaneously during her employment with Goodfellow, both of which would disqualified Plaintiff from working for Goodfellow in the first place and thus go to the heart of the employment relationship, and if proven, would shield Goodfellow from liability on Plaintiff's discrimination claims. Both of these actions are relevant to Goodfellow's after-acquired evidence defense and will not cause unfair prejudice, confuse the issues, or mislead the jury and are not being presented as character evidence.

## II. LEGAL ARGUMENT

Goodfellow intends to produce evidence to prove its after-acquired evidence defense based on (1) Plaintiff's use and/or consumption of marijuana a day before Plaintiff's pre-employment drug test (which Goodfellow required of all of its employees in safety-sensitive positions) and during her employment with Goodfellow and (2) Plaintiff's illegal sale of prescription drugs during her employment with Goodfellow. Plaintiff's medical records and testimony on these subjects are relevant to Goodfellow's defense.

### A. Evidence of Plaintiff's use and consumption of marijuana and sale of prescription drugs is relevant to Goodfellow's after-acquired evidence defense.

FRE Rule 401 sets forth that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Here, this evidence has the tendency to prove that Plaintiff consumed marijuana a day before and during her employment and illegally sold her prescription drugs, which facts that are of consequence in determining Goodfellow's after-acquired evidence defense.

///

The after-acquired evidence doctrine may immunize an employer from liability altogether. *Camp v Jeffer, Mangels, Butler & Marmaro*, 35 CA4th 620, 632 (1995).  When the plaintiff's wrongdoing goes to the "heart" of the employment relationship, the doctrine may preclude the plaintiff from obtaining any relief.  *Id.* at 637.  In *Camp*, the plaintiffs falsely represented to the defendant law firm that they had never been convicted of a felony, when in fact they had been convicted of conspiring to defraud a federally insured bank.  This went to the heart of the employment relationship because the defendant was required to certify to one of its clients (the Resolution Trust Corporation) that none of its employees were convicted felons.  The plaintiffs' misrepresentation thus also put the law firm at risk of losing its contract with the client.  Defendant contends it would not have hired Plaintiff at all if it had known about Plaintiff's use and consumption of marijuana immediately before Plaintiff took her pre-employment drug test, Plaintiff's consistent marijuana use, and Plaintiff's illegal sale of prescription drugs.  All of these actions go to the heart of the employment relationship.  Defendant also contends it would have terminated Plaintiff for these reasons had it learned about her misconduct during her employment.

Further, Plaintiff's reliance on *Quan v. Smithkline Beecham Corp*. for the proposition that evidence related to an after-acquired evidence defense only comes into play after a finder of fact determines that an employer is liable is misplaced.  *Quan* sets forth just the opposite—"after-acquired evidence may be used <u>when the employer contests liability on the ground that the plaintiff was never qualified for the job in the first place.</u>"  *Quan v. Smithkline Beecham Corp.,* 151 F. App'x 518, 519 (9th Cir. 2005).  Moreover, the other case cited by Plaintiff—*Rooney v. Koch Air, LLC*, does not address when evidence related to an after-acquired evidence defense may be presented at trial.  Rather, the Court in *Rooney* merely reviewed a District Court's grant of <u>summary judgment</u>.  *Rooney v. Koch Air, LLC*, 410 F.3d 376, 380 (7th Cir. 2005).

### 1. Use and Consumption of Marijuana

Goodfellow is an excavation company whose primary focus is on the health and safety of its employees on the jobsite.  Accordingly, Goodfellow's Substance Abuse Policy makes clear that its employees are subjected to five possible types of drug tests: (1) pre-employment testing, (2) post-accident testing, (3) reasonable cause testing, (4) random testing, and (5) recall testing.  The

1  policy makes clear that "prohibited drug" includes "marijuana". Declaration of Allison Shrallow,
2  ¶ 2, Ex. A. Further, the policy states that "the Company will not hire an applicant or continue to
3  employ an employee who fails a drug test after the Medical Review Officer determines that there
4  is no legitimate medical explanation for the confirmed positive test result other than the
5  unauthorized use of a prohibited drug. <u>An employee who fails a drug test will be discharged</u>." *Id.*
6  The same is true if an employee refuses to take a drug test. *Id.* Finally, the policy sets forth that
7  "the use of marijuana or cannabinoids is a violation of this Policy, even if said use is prescribed by
8  a licensed physician, given that. . . the use of marijuana could affect the safety of the Company's
9  employees, clients and third parties." *Id.* Thus, according to this policy, if an employee tested
10 positive for marijuana, they would be terminated regardless of whether the employee consumed
11 marijuana on the jobsite or during off hours, or whether the employee has a prescription for
12 marijuana. It follows that Goodfellow prohibited its employees from using marijuana <u>at all</u>
13 immediately before and during their employment with Goodfellow.
14         Plaintiff's medical records reflect that on February 23, 2017 or approximately three months
15 before Plaintiff's began her employment with Goodfellow, that Plaintiff's doctor advised Plaintiff
16 "not to use Marijuani (sic) and as per [patient] she has been using for long time." *See* Plaintiff's
17 Exh. 6. Her medical records also reveal that Plaintiff uses marijuana five times per week and that
18 on April 7, 2017 or about a month before Plaintiff started her employment with Goodfellow,
19 Plaintiff tested positive for THC (the active ingredient in marijuana) and Cannabinoids. *Id.*
20 Plaintiff's medical records reflect that on May 8, 2017 or <u>one day</u> before Plaintiff took her pre-
21 employment drug test and began working for Goodfellow, Plaintiff's urine drug screen came back
22 positive for marijuana. *Id.* Her medical records dated May 9, 2017, or the same day Plaintiff
23 started her employment with Goodfellow, reflect that Plaintiff "also uses Marijuani (sic) for sleep
24 and releax (sic)." *Id.* Her doctor noted, '[i]f she is taking Marijuani (sic), I can not (sic) prescribe
25 any pain medicine and anxiety medicine." Further, Plaintiff's medical records reflect that "her
26 serial urine toxicology screens . . . 2/17 and 6/17 all show (+) [positive] THC: does she carry a
27 medical THC card? I suspect she is getting this from outside [Kaiser Permanente]. . . ." *Id.*
28 Accordingly, Goodfellow has good cause to believe that Plaintiff cheated on her pre-employment

drug test and used marijuana immediately before and during her employment with Goodfellow in direct violation of Goodfellow's Substance Abuse Policy, which goes to the heart of Plaintiff's employment with Goodfellow and thus these actions are directly relevant to Goodfellow's after-acquired evidence defense. Further, Goodfellow's suspicion that Plaintiff somehow cheated on her pre-employment drug test was corroborated by Plaintiff's comment to her doctor on November 11, 2018, when her doctor informed her that her urine test came back positive for marijuana. The doctor's notes reflect "called and spoke to [patient], relayed message before per PCP instruction, [patient] upset and stated she was tired of it and she did not believe urine test was still positive, <u>stated she was going to do it like everyone else and buy it on the street</u>." *Id.*

Moreover, Plaintiff testified at her deposition that she used marijuana during her employment with Goodfellow. Shrallow Dec. ¶ 3, Ex. B. Plaintiff also testified that she believed she could use marijuana while being employed by Goodfellow as long as it was not at the workplace, claiming it was her "personal business." *Id.* at

### 2. Illegal Sale of Prescription Drugs

Plaintiff testified during her sworn deposition to the illegal sale of a controlled substance, specifically hydrocodone (Norco, a Schedule III drug) and diazepam (Valium, a Schedule IV drug). Dkt. 53-1. Plaintiff testified she was in possession of a prescription for these controlled substances since 1990 but that she has sold "all of them" to her friend except for "a couple" that she kept for personal use to enable her to pass a drug screening evidencing use so that she could obtain monthly refills. *Id.* Both Federal and State law punish the unlawful sale of controlled substances. *See e.g.,* 21 U.S.C. §§ 841, 960, 962, and 46 U.S.C. § 70506*;* Health & Saf. Code, § 11352. Had Goodfellow known about Plaintiff's illegal activity it would not have hired Plaintiff in the first instance.

Plaintiff waived her Fifth Amendment privilege by answering these questions under oath while in the presence of her attorney. *See Minnesota v. Murphy* 465 U.S. 420, 427 (1983)("the privilege must be invoked at the time the question is asked, or it is lost by waiver.") Accordingly, Goodfellow intends to use Plaintiff's deposition testimony on this topic at trial and ask her further questions about it. Since Plaintiff has already admitted to a crime, she cannot invoke the privilege

at trial since she would not further incriminate herself by answering specific questions about it. *See Rogers v. United States*, 340 U.S. 367, 372-73, 71 S. Ct. 438, 442 (1951). And if Plaintiff tries to invoke the Fifth Amendment privilege at trial, then the jury should be instructed that an adverse inference may be drawn by Plaintiff's invocation so as to not prejudice Goodfellow. *See Doe ex rel Rudy-Glanzer v. Glanzer*, 232 F3d 1258, 1264 (9th Cir 2000)( "not allowing the negative inference to be drawn poses substantial problems for an adverse party who is deprived of a source of information that might conceivably be determinative in a search for the truth.").

Contrary to what Plaintiff's claims in her motion, Judge Westmore's Order focused on the narrow issue of whether Goodfellow was entitled to <u>additional</u> deposition time to question Plaintiff about her sale of prescription medications and did not focus on whether Plaintiff's deposition testimony was relevant to Goodfellow's after-acquired evidence defense. Judge Westmore only opined that because Plaintiff applied for and accepted new employment after her alleged constructive termination, the <u>mitigation of back pay defense</u> does not apply. Dkt. 65.

Accordingly, this evidence is relevant to Goodfellow's after-acquired evidence defense and if proven, bars Plaintiff from any recovery on her discrimination causes of action. Accordingly, Goodfellow should be entitled to present this evidence at the same time as Plaintiff's case in chief for the purpose of judicial efficiency and fairness to Goodfellow.

**B.   Evidence of Plaintiff's sale of prescription medications and use of marijuana would not cause unfair prejudice, confuse the issues, or mislead the jury**

This evidence is not unfairly prejudicial. Plaintiff admits to both consuming marijuana and selling her prescription drugs, both of which are/were illegal in May through September 2017. In other words, Goodfellow is fairly—not unfairly—depicting her as someone who broke the law, which Plaintiff has admitted. Because adult marijuana use in California is now generally legal and juries presumably have a more lax view of it and because Plaintiff solely sold and did not consume her prescription drugs, there is little chance of a jury viewing her as an "addict" as Plaintiff claims. Finally, Goodfellow will present the evidence in a straight forward way to alleviate Plaintiff's concerns that the jury might believe that Plaintiff was using drugs or that drug use was related to Plaintiff's choice to resign.

**C.   Evidence of Plaintiff's sale of prescription medications and use of marijuana is not being used as character evidence**

Goodfellow is solely using the evidence for the purpose of proving its after-acquired evidence defense and to rebut Plaintiff's claims in this action and not for the improper purpose of maligning Plaintiff's character as a criminal, dishonest or an addict.

### III.   CONCLUSION

Based on the foregoing, Goodfellow respectfully requests the Court to deny Plaintiff's motion and allow it to produce evidence related to Plaintiff's sale of prescription medications and use and/or consumption of marijuana immediately before and during Plaintiff's employment with Goodfellow.

DATED: August 13, 2019                LEWIS BRISBOIS BISGAARD & SMITH LLP


By: */s/Allison L. Shrallow*
    Joseph R. Lordan
    Allison L. Shrallow
    Attorneys for Defendant GOODFELLOW TOP GRADE CONSTRUCTION, LLC (erroneously sued as Goodfellow Top Grade)



**FEDERAL COURT CERTIFICATE OF SERVICE**

*Trina Hill v. Goodfellow Top Grade*

U.S. District Court-ND, Oakland Division, Case No. 4:18-CV-01474-HSG

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

At the time of service, I was over 18 years of age and not a party to the action. My business address is 333 Bush Street, Suite 1100, San Francisco, CA 94104-2872. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On August 13, 2019, I served the following document(s): **DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 1 REGARDING PRESCRIBED MEDICATION AND JEWELRY**

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

**SEE ATTACHED SERVICE LIST**

The documents were served by the following means:

☒ (BY COURT'S CM/ECF SYSTEM) Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on August 13, 2019, at San Francisco, California.

*/s/Berenice Barragan*
Berenice Barragan

**SERVICE LIST**
*Trina Hill v. Goodfellow Top Grade*
U.S. District Court-ND, Oakland Division, Case No. 4:18-CV-01474-HSG

| | |
|---|---|
| J. David Hadden<br>Lynn H. Pasahow<br>FENWICK & WEST LLP<br>801 California Street<br>Mountain View, CA 94041 | ***Attorneys for Plaintiff TRINA HILL***<br><br>Telephone: 650.988.8500<br>Facsimile:  650.938.5200<br>Email: dhadden@fenwick.com<br>          lpasahow@fenwick.com |
| Matthew B. Becker<br>Eric B. Young<br>Cheih Tung<br>FENWICK & WEST LLP<br>555 California Street, 12$_{th}$ Floor<br>San Francisco, CA 94104 | ***Attorneys for Plaintiff TRINA HILL***<br><br>Telephone: 415.875-2300<br>Facsimile: 415.281.1350<br>Email: mbecker@fenwick.com<br>          eyoung@fenwick.com<br>          ctung@fenwick.com |